# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Criminal Action No. **3:20-cr-122-L** |
| | § | |
| ALEOGHENA OKHUMALE (4) | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Aleoghena Okhumale's ("Defendant" or "Mr. Okhumale") Amended Motion to Revoke Detention Order ("Motion") (Doc. 55), filed March 20, 2020. After careful consideration of the Motion, the Government's Response (Doc. 59), filed March 25, 2020, the record, and applicable law, the court **denies** Defendant's Amended Motion to Revoke Detention Order (Doc. 55).

## I.     Factual and Procedural Background

On March 4, 2020, Defendant was charged by Indictment (Doc. 1) for Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. § 1956(h) ("Count 1"), and Unlicensed Money Transmitting in violation of 18 U.S.C. § 1960(a) and (b)(1)(C) ("Count 2"). Defendant was indicted for his alleged involvement in the underlying conduct while serving as an Information Technology ("IT") Specialist at Ping Express US LLC, which was also charged in Count 1 of the Indictment. On March 10, 2020, Defendant was arrested and appeared before United States Magistrate Judge Irma Carrillo Ramirez for his initial appearance and was ordered detained pending his detention hearing.

On March 17, 2020, Defendant appeared before United States Magistrate Judge Renée Toliver for his detention hearing. Following the hearing, Magistrate Judge Toliver determined that, based on Defendant's prior criminal history and participation in criminal activity while on

**Memorandum Opinion and Order – Page 1**

bond for recent state felony and misdemeanor charges, no condition or combination of conditions of release would reasonably assure the safety of any other person and the community. Det. Hr'g Tr. 90:24-91:11. She further determined that no conditions or combination of conditions of release would reasonably ensure Defendant's appearance in court as required, given his prior attempt to evade law enforcement, lack of ties to the Northern District of Texas, and significant ties beyond the United States. *Id.*; *see also* Doc. 44. For these reasons, she ordered Defendant detained pending trial.

## II. Discussion

### A. Parties' Arguments

On March 20, 2020, Defendant filed this Motion, asking the court to rescind the Magistrate Judge's Detention Order (Doc. 44) and release him. In support of his request, Defendant asserts as follows:

- The Dallas County District Attorney's Office investigator that is assigned to the federal task force and that testified at the detention hearing could not point to any tangible evidence connecting Defendant to Count One or Count Two of the Indictment;

- His brother testified that he was a peaceful person and would appear in court as directed;

- He successfully completed his term of probation for a 2018 Dallas County misdemeanor conviction for driving while intoxicated ("DWI") and appeared for all court settings;

- He is a permanent legal alien of the United States and has lived in Dallas for the past five years;

- His Nigerian passport was seized upon his arrest, and he has not been living a lavish lifestyle; and

- He only performed IT services and a "bit" of marketing for Ping Express and had no ownership, direction, or control in the company.

*See* Def.'s Mot. 1-2. Defendant also acknowledges that his parents live in Washington, D.C., and that in November 2019, he was arrested for a felony possession of a controlled substance charge in Dallas County, as well as another DWI. Additionally, Defendant contends, "[W]ith the pandemic virus coursing through the jails, prisons, and society, justice would be better served to have the Defendant under house arrest with electronic monitoring and various conditions." *Id.* at 2-3. Moreover, he asserts that he has no intention of fleeing, and other defendants named in the same Indictment were released with conditions when they appear to have more criminal exposure than he does. Thus, he contends, "It would be a shame to detain a peaceful individual for months, under the prevailing public health circumstances, when he is likely to ultimately receive a sentence of home detention/probation upon conviction." *Id.* at 3. For these reasons, Defendant contends that the transcript supports his release and requests that the court revoke the Magistrate Judge's Detention Order.

In response, the Government contends that the Magistrate Judge's Detention Order was correct and supported by the evidence presented during the detention hearing. Specifically, it highlights that its witness, Dallas County District Attorney's Office Investigator Roy Jenkins (the "Investigator"), testified as follows and that his testimony was not rebutted:

- Items found in [] Defendant's apartment on March 9, 2020[,] included a VISA debit card in another person's name; two recently-dated checks made payable to [] Defendant and each for over $3[,]000[, which] a federal agent later determined to be invalid or fraudulent; and two stacks of unused paper upon which checks could be printed (one of which matched one of the invalid checks).

- [] Defendant received over five times his annual salary into his personal bank accounts over two years, including over $200,000 in cash, and then wired over $240,000 of it to accounts in Nigeria.

- [] Defendant has been on bond in Dallas County since November 16, 2019, following his arrest for possession of a controlled substance (a felony), and possession of marijuana and driving while intoxicated (two misdemeanors).

Gov't's Resp. 1-2. Additionally, the Government noted that Magistrate Judge Toliver considered: (1) Defendant's prior criminal history; (2) his participation in criminal conduct while on bond for state offenses; (3) his lack of significant community or family ties in the Northern District of Texas; (4) his significant ties outside of the United States; and (5) his prior attempt to evade law enforcement, in deciding that Defendant should be detained. *Id*. at 2. Thus, it contends that the record supports her decision to detain Defendant pending trial, and, accordingly, Defendant's Motion should be denied.

### B. Legal Standard

"When the district court, pursuant to 18 U.S.C. § 3145(b), acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts de novo and makes an independent determination of the proper pretrial detention or conditions for release." *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985) (citations omitted). "Under the Bail Reform Act [the "Act"], a defendant shall be released pending trial unless a judicial officer determines that release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989). "[T]he lack of reasonable assurance of either the defendant's appearance or the safety of others or the community is sufficient; both are not required." *Fortna*, 769 F.2d at 249 (citations omitted).

"[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person or the community," a court must consider: "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and the seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). In determining whether a defendant is a flight risk, the court must

determine by a preponderance of the evidence that no condition or combination of such will reasonably assure the defendant's appearance. *Fortna*, 769 F.2d at 250. "With respect to the quantum or character of proof, . . . the Act provides that the facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure *the safety* of any other person and the community shall be supported by clear and convincing evidence." *Id.* (quoting § 3142(f)) (internal quotation marks omitted).

C.  **Analysis**

The court, having conducted a *de novo* review of the transcript of Defendant's March 17, 2020 detention hearing, the Magistrate Judge's Detention Order, the legal briefs of the parties, and the record, determines that the Section 3142(g) factors weigh in favor of detention. With respect to the first two Section 3142(g) factors, the "nature and circumstances of the offense charged" and "the weight of the evidence against the person," Defendant is charged with Conspiracy to Launder Monetary Instruments and Unlicensed Money Transmitting.[1] These are serious offenses with the possibility of a substantial fine or significant jail time.

With regard to the evidence supporting these charges, Defendant contends that the "sum total of the evidence against him" is "[u]ncashed/undeposited 'fraudulent checks' found in [his] desk drawer." Def.'s Mot. 1. He further contends, although somewhat contradictorily, that the Investigator could not point to any tangible evidence connecting him to the charged offenses. In response, the Government acknowledges that it did not: (1) offer specific facts underlying the charged offenses; (2) explicitly explain Defendant's role in the charged offenses; or (3) address the weight of the evidence against him. Instead, it asserts:

---

[1] The offense of Conspiracy to Launder Monetary Instruments carries "a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater[;] or imprisonment for not more than twenty years, or both." 18 U.S.C. § 1956(a) & (h). Additionally, the offense of Unlicensed Money Transmitting carries a fine in accordance with Title 18 or imprisonment for not more than five years, or both. 18 U.S.C. § 1960(a).

**Memorandum Opinion and Order – Page 5**

> [F]rom the Indictment, it is clear that the first count charges [] Defendant with an offense for which a 20-year prison sentence could be imposed. Moreover, Ping [Express], [] Defendant's employer, is charged in the Indictment [,] [a]nd the time period for the offense alleged in both counts of the Indictment are the same.

Gov't's Resp. 4. Further, the Government noted that a VISA debit card in someone else's name and two stacks of unused paper that could be used to print checks, along with two undeposited fraudulent checks, were also found during the search of Defendant's apartment. *See* Gov't's Resp. 1-2; *see also* Det. Hr'g Tr. 12:1-15:25.

Considering the parties' positions, the court determines that the nature of the charges and weight of the evidence against Defendant weigh in favor of detention. In addition to the evidence highlighted by the Government, the record also reflects that even though Defendant's annual salary was approximately $45,000 per year in 2017 and 2018, he deposited more than $500,000 over the same period, $200,000 of which was in cash deposits. Det. Hr'g Tr. 16:5-23. Additionally, the Investigator testified that Defendant transferred more than $240,000 from his personal accounts to his other accounts in Nigeria, and he was moving money on behalf of Ping Express without the appropriate license. *Id*. at 17:2-6; 33:5-14.

On cross-examination of the Investigator, Defendant's counsel highlighted that the money transfers were not "sinister" on their face. *Id.* at 24:22-25:2. To a certain extent, the court agrees. While such transfers are not inherently criminal, when viewing the totality of the circumstances surrounding the charged offenses, one can reasonably believe that an offense had occurred, especially given the presence of paper used to make fraudulent checks and large transfers of money, which greatly exceed Defendant's usual salary, to foreign accounts. In any event, the totality of the evidence is more than sufficient to cause the court to have a healthy concern

regarding Defendant's activities and conduct.² For these reasons, the court determines that the first two Section 3142(g) factors weigh in favor of detention. The inquiry, however, does not end there. The court must now consider the remaining two Section 3142(g) factors—"the history and characteristics of the person" and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

With regard to the third Section 3142(g) factor, "the history and characteristics of the person," the court determines that this factor also weighs in favor of detention. In considering this factor, a court looks to available information regarding "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Defendant relies on his brother's testimony to demonstrate that he is a peaceful person and will show up to required court appearances. He also notes that he is a permanent legal resident of the United States and has lived in the Dallas area for the past five years. While this is relevant to the court's determination, these facts alone do not negate other evidence presented by the Government concerning Defendant's lack of ties to the community and prior criminal history.

First, Defendant does not have significant community ties within the Northern District of Texas. Most of Defendant's immediate family live outside of Texas, and he has additional family ties in Nigeria. Det. Hr'g Tr. 44:9-45:8. Defendant's main tie to the district is Anslem Oshionebo, who is also under indictment for the same offenses as Mr. Okhumale, which does not advance Defendant's argument that he should be released.

---

² The court is in no way stating that Defendant is guilty, as such determination requires proof beyond a reasonable doubt. The court's statement is only made in the context of whether detention is warranted.

**Memorandum Opinion and Order – Page 7**

Second, Defendant asserts that he has no intention of fleeing. Every defendant who seeks release has argued to this court that he or she will not flee or has no intention of fleeing. There is scant evidence in this case, however, to support Defendant's argument. Defendant relies on the testimony of his brother in support of his release. His brother testified that Defendant refused to travel and missed several family events to comply with the conditions of his probation related to his 2018 DWI conviction. Det. Hr'g Tr. 37:22-38:11. He further testified that Defendant has also refused to travel since his 2019 arrest for state drug charges and another DWI because he had hearings to attend. *Id.* at 38:12-16; 40:7-13. The court, however, cannot take this testimony at face value because Defendant's brother testified in a manner that the court would expect any sibling to testify on behalf of a sibling in need. Nonetheless, the court notes that Defendant's current financial situation (the repossession of his car) and the seizure of his Nigerian passport provide some support for his argument that he will not flee.

The court, however, must also consider his substantial ties to and support from family members living in other states and countries, who may be able to offer financial assistance if Defendant chose to flee. While this possibility is not dispositive, the court cannot ignore his lack of ties within the Northern District of Texas in determining whether he is a flight risk. Even considering these factors, however, the court cannot reasonably infer that he is a flight risk simply because of his familial ties within and outside the United States. Moreover, that Defendant successfully completed his term of probation for his 2018 DWI conviction and appeared for all required court settings is relevant to the court's determination. The court understands that Defendant has a prior arrest for evading arrest, but the record concerning this charge is not developed. Further, the Government acknowledged that this charge was ultimately dismissed. Thus, the court does not have sufficient information to determine whether his prior *arrest* for

evading arrest is significant in determining whether he is a flight risk, and, accordingly, Defendant's prior arrest for evading arrest plays no role in the court's determination of this issue. The court, therefore, determines that the Government did not prove by a preponderance of the evidence that Defendant would be a flight risk. As the Government fails to meet its burden of proof on this issue, whether any conditions, or combination of conditions, would reasonably assure Defendant's appearance in court is quite beside the point. Thus, the court disagrees with the Magistrate Judge's Detention Order on these bases.

The court determines, however, that the Government has proved by clear and convincing evidence that Defendant poses a risk to his safety and that of others, which warrant his detention. The Fifth Circuit defines clear and convincing evidence as follows: "[T]he weight of proof [that] produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct[,] weighty, and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *United States v. Jackson*, 19 F.3d 1003, 1007 (5th Cir. 1994) (citations and internal quotation marks omitted).

As the record reflects, Defendant was convicted of DWI in 2018, for which he successfully completed his term of probation. In November 2019, however, he was arrested in Dallas County for possession of a controlled substance (a felony), possession of marijuana (a misdemeanor), and another DWI. He was on bond for these charges at the time he was indicted for the federal offenses at issue. His continued use of alcohol alone creates a safety risk to him and the community (the public-at-large) if he operates a motor vehicle.

Even more telling regarding Defendant's use of alcohol is the statement made during the detention hearing by his counsel: "I think it is hopefully clear to the Court [that] my client's got a

drinking problem[.]" Det. Hr'g Tr. 85:10-11. This statement, without reservation, clearly acknowledges that Defendant is a danger to himself and the community because of his alcohol use if he is operating a motor vehicle while intoxicated. It goes without saying that a person who drives while he is intoxicated places himself and others at great risk of being injured or killed.

It is well-known to law enforcement officials—and the public—that many traffic accidents are caused by persons driving while intoxicated. That Defendant's car was repossessed does nothing to minimize the court's concern, as there is nothing preventing Defendant from borrowing or renting a vehicle, or otherwise gaining access to one. Accordingly, the court determines that Defense counsel's admission, Defendant's DWI conviction in 2018, and his 2019 arrest for DWI, which also relate to the fourth Section 3142(g) factor, which is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release," weighs in favor of detention. For these same reasons, the court finds it unnecessary to address the 2019 felony and misdemeanor drug charges, as Defendant's conviction for DWI, his recent DWI arrest, and his counsel's acknowledgment that Defendant has "a drinking problem" are more than enough to convince the court, by clear and convincing evidence, that Defendant not only poses a risk to his safety but also to the safety of the public at large.

As the court has determined that Defendant poses a risk to his safety and the safety of others, it now considers whether any conditions or combination of conditions would reasonably assure his safety and the safety of the public. Magistrate Judge Toliver did not detail her rationale for concluding that no conditions or combination of conditions would reasonably assure that goal. The court, however, determines that the record reflects by clear and convincing evidence that no conditions or combination of such would accomplish this objective.

Defendant contends that electronic monitoring and house arrest will ensure that he does not pose a risk to himself or the community. The court disagrees. This is so because Defendant's counsel acknowledged that Mr. Okhumale has a weakness for alcohol or "a drinking problem," and because he can easily remove a monitor or leave his place of home confinement. Once the monitor is removed, and by the time probation or law enforcement discovers that it has been removed, Defendant can easily obtain access to a vehicle, drive it, and endanger his safety and the safety of others. Even if probation or law enforcement officials act quickly, they have no way of knowing Defendant's location once the monitor is removed. In the undersigned's 21 years as a judge, he has seen a number of cases in which a person on pretrial release or post-sentencing release has removed a monitor. As previously discussed, that Defendant no longer has a vehicle is quite beside the point, as he is able to access a vehicle by other means. The court, therefore, is not convinced that any conditions or combination of conditions will reasonably assure his safety and the safety of the public. Accordingly, the court determines that clear and convincing evidence exists—considering Defendant's DWI conviction and pending DWI charge and his problem with alcohol—to support the Magistrate Judge's Detention Order to detain Defendant pending trial.

As an alternative basis for release, Defendant asserts that Codefendants, whom he contends are more culpable than he is, were released with conditions. This argument is fundamentally flawed for two reasons. First, upon reviewing the Indictment, the court notices that Codefendants Opeyemi Odeyale and Anslem Oshionebo, who appeared in the same detention hearing, are charged in both counts of the Indictment, as was Mr. Okhumale. The third Codefendant, Olufemi Sadiq, also appeared in that detention hearing and was charged only in Count 1 of the Indictment. Thus, based on the Indictment alone, Defendant's assertion that other Codefendants are more culpable "does not hold water." Second, Magistrate Judge Toliver, who was the magistrate judge

for all four Codefendants at the detention hearing, highlighted several factors that made the other Codefendants' situations different from Mr. Okhumale's, such as strong familial ties within this district and lack of prior criminal history. Thus, Defendant's attempt to compare himself to his Codefendants is unpersuasive.

Defendant also asserts that justice would be better served if he were placed under house arrest with electronic monitoring because of the current COVID-19 pandemic and because he would likely receive home detention or probation upon conviction. The court disagrees. First, the Bureau of Prisons has implemented measures for addressing the COVID-19 pandemic to minimize the detainees exposure to contracting the virus. *See* "BOP Implementing Modified Operations," *Federal Bureau of Prisons*, www.bop.gov/coronavirus/covid19_status.jsp. While Defendant's concerns about the pandemic are not without merit, that alone is insufficient to warrant release without consideration of the Section 3142(g) factors.

Second, Defendant's prediction regarding his ultimate sentence upon conviction is presumptuous, as no one, not even the court, can predict what sentence will be imposed if Defendant pleads guilty or is convicted by a jury. Any prediction of a sentence at this stage is nothing more than a "shot in the dark." This is so because the court has to consider the Advisory Guidelines and the statutory factors set forth in 18 U.S.C. § 3553(a)(1)-(7), as applicable to Defendant's sentencing. Thus, the court finds Defendant's conjecture and speculation irrelevant for purposes of ruling on the present motion.[3]

---

[3] Defense counsel also raised a concern that Defendant's detention hinders his ability to meet with him because the Seagoville federal detention facility is no longer allowing attorney-client meetings, which he contends is a "violation of the protections provided under the United States and Texas Constitutions." Def.'s Mot. 3. The court acknowledges this concern. For the purposes of deciding this Motion, however, this factor is not a consideration. Moreover, this concern is not necessarily dispositive, as virtually all detainees and inmates at the facility likely share the same concern. Further, this is certainly a matter that the court can take up later and grant the appropriate relief if Defendant and his counsel have not had adequate time to prepare for any proceeding. Accordingly, granting release for one defendant solely on this basis would require the court to grant release to all Defendants, which would not be in the best interest of justice.

**Memorandum Opinion and Order – Page 12**

### III.  Conclusion

After conducting an independent review of the Defendant's objections, the parties' arguments, the detention hearing transcript, and the Magistrate Judge's order, the court determines that the totality of factors considered warrants Defendant's detention.  Although the Government did not prove by a preponderance of the evidence that Defendant was a flight risk, it did establish by clear and convincing evidence that Defendant poses a risk to his safety and that of others.

As driving while intoxicated is inherently dangerous conduct and in light of the record, the last two Section 3142(g) factors—"the history and characteristics of the person" and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release"—weigh heavily in favor of Defendant's detention.  Moreover, the court determines that the record reflects by clear and convincing evidence that no conditions or combination of conditions will reasonably assure the safety of Defendant or the public (community).  For all of these reasons, the court **concludes** that the Government met its burden by clear and convincing evidence and **denies** Defendant's Amended Motion to Revoke Detention Order (Doc. 55).

**It is so ordered** this 7th day of April, 2020.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge